Mary BROWN and Raymond
Brown, Plaintiffs,

v.

CITY OF MARGATE, et al., Defendants.

No. 88–6105–Civ.

United States District Court,
S.D. Florida.

Dec. 29, 1993.

Marc H. Gold, Barbara A. Heyer, Gold & Heyer, Fort Lauderdale, FL, for Mary Brown and Raymond Brown.

Mark R. Boyd, Eric M. Zivitz, Heinrich, Gordon, Batchelder, Hargrove, Weihe & Gent, Fort Lauderdale, FL, for City of Margate and Louis Chamberlain.

William H. Platow, Panza, Maurer, Maynard & Neel, Fort Lauderdale, FL, for Lawrence Christopher.

### ORDER DENYING DEFENDANTS' POST–TRIAL MOTIONS

HOEVELER, District Judge.

THIS CAUSE comes before the Court upon Defendant City of Margate's "Motion for Judgment After Trial and/or Motion to Set Aside the Verdict and/or Motion for JNOV and/or Motion for Judgment in Accordance with Motion for a Directed Verdict and in the Alternative Motion for New Trial" and the City's "Supplemental Motion for New Trial," and Defendant Louis Chamberlain's "Motion for Judgment After Trial and/or Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial." Having considered the motions and responses thereto and being otherwise duly advised in the premises, the Court is now prepared to address the issues presented.

### I. BACKGROUND

This was a police brutality case brought against the City of Margate, various Margate city officials, and police officer Louis Chamberlain. Plaintiff Mary Brown sued the City,

the Margate Police Chief,[1] former Mayor Mitch Anton, City Manager Thomas Hissom, and Police Officer Louis Chamberlain III under 42 U.S.C. § 1983 for violating her civil rights. She also sued Officer Chamberlain for assault and battery. Her husband, Raymond Brown, filed a spousal claim. The case was tried before a jury from March 22–April 12, 1993. At the close of Plaintiff's case, all Defendants moved for directed verdicts. The Court granted Anton's motion, denied Chamberlain's motion, and took the City's motion under advisement. Both the assault and battery and the § 1983 claims went to the jury. The jury rendered its verdict on April 12, 1993, finding for the Plaintiff Mary Brown and against Chamberlain on the assault and battery and the § 1983 claims and against the City on the § 1983 claim. The jury acquitted both City Manager Thomas Hissom and the Margate Chief of Police of all liability. The jury awarded Mary Brown $50,000 in compensatory damages, but awarded no punitive damages. Raymond Brown took nothing.

## II. DISCUSSION

### A. The City of Margate's Motions

#### 1. Relief from the Verdict

The City has moved for relief from the adverse verdict on the § 1983 claim by way of a "Motion for Judgment After Trial and/or Motion to Set Aside the Verdict and/or Motion for JNOV and/or Motion for Judgment in Accordance with Motion for a Directed Verdict." In essence, the City argues that Plaintiff did not meet her burden of establishing that the City had a custom or practice of deliberate indifference to its police officers' use of excessive force; therefore, this case should not have been sent to the jury, and the verdict cannot stand.

 A municipality is not normally responsible for the unauthorized actions of lower level employees, but where final decision-makers participate in establishing a policy which directly or indirectly results in a constitutional violation, a city can be held liable

under § 1983. Defendant claims Plaintiff did not meet the Eleventh Circuit test for municipal liability laid out in *Depew v. City of St. Mary's* which instructs that:

> To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally, random acts or isolated incidents are insufficient to establish a custom or policy. However, the custom need not receive formal approval.

787 F.2d 1496 (11th Cir.1986) (citations omitted). Once a custom or practice is shown, that custom or practice must also be found to be "the moving force" behind the violation of one or more of plaintiff's constitutional rights (in this case, the right to be free from the use of excessive force). *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Mary Brown premised her § 1983 case on the City's allegedly inadequate procedures for training and supervising officers in the appropriate use of force, for inadequately recording and investigating citizen complaints of excessive use of force, and for failing to discipline officers who engage in the excessive use of force. Mary Brown argued that Margate police officers would use force with relative impunity, knowing that the City would not follow up on complaints and would not discipline or penalize officers for their excessive or unwarranted actions, and that this custom led to the incident in which Mary Brown was injured by Officer Chamberlain.

The City countered that its officers were fully trained in the appropriate use of force, and that all incidents prior to the Mary Brown matter were properly investigated and the officers involved were disciplined or not disciplined as was appropriate given the facts of each particular case. The City defended its policy of informally resolving complaints without written documentation and

---

**1.** Former Chief Lawrence Christopher was originally a named Defendant. However, Chief Christopher died prior to the trial of this cause

and was never substituted. The Court therefore refers simply to the "Chief of Police" as one of the Defendants.

argued that *Monell* and its progeny do not require a municipality to adopt any particular procedures to avoid liability under § 1983.[2]

■ This Court is now being asked to determine that there was insufficient evidence presented to support the jury's verdict, and to set that verdict aside. As the Eleventh Circuit noted in *Depew*, the test for determining sufficiency of the evidence weighs heavily in favor of the victorious party:

> [W]hen considering the sufficiency of the evidence, this court must consider the evidence in a light most favorable to the plaintiffs and give them the benefit of all inferences which the evidence supports. This court must affirm unless it is convinced that there is a complete absence of probative evidence supporting the verdict or that the evidence so overwhelmingly supports the city that reasonable men in the exercise of impartial judgment could not render a verdict against it.

*Depew*, 787 F.2d at 1499. While this may have been a close case, the Court does not find that the evidence presented overwhelmingly favored the City, and it will not, therefore, disturb the verdict rendered by the jury.

### a) Prior incidents not "the moving force" behind Chamberlain's actions.

Defendant argues that two prior occurrences of alleged police brutality—the Goldman and the Luback incidents—were "not the moving force" behind Officer Chamberlain's actions on the evening of May 24, 1985, and thus there is insufficient evidence to allow the jury's verdict to stand. As support for this proposition, Defendant cites the testimony of Plaintiff's expert, Ken Harms, that these incidents "were not the moving force." Defendant misconstrues the essence of Mr. Harms' testimony. What he actually opined was that, *standing alone*, these two incidents may not have been the moving force behind Chamberlain's actions. However, considered in conjunction with other evidence indicating a lack of proper training and inadequate investigation of citizen complaints, these incidents would in fact support the argument that Chamberlain acted in reliance on the knowledge that his use of force would not be investigated or would not result in disciplinary action against him. Regardless, as the Defendants themselves repeatedly noted during Mr. Harms' testimony, an expert's opinion is introduced to assist the jury in its determination of the facts, not to supplant the jury's role by deciding what does or does not constitute a pattern or practice.

Defendants' witnesses testified that the Chief of the Margate Police Department reviewed every police brutality investigation personally. Plaintiff argued that the City therefore essentially conceded that it was on notice of a potential excessive use of force problem in the department based on past incidents, and that their failure to take appropriate remedial measures was the moving force behind the Mary Brown incident.

The City attempts to distinguish the instant case from the legal precedent by arguing that the Mary Brown incident was an isolated event, unrelated to prior incidents of alleged police brutality, and not occasioned by any City policy of tolerance toward the excessive use of force by police officers. Defendant claims the Goldman and Luback matters were both thoroughly investigated by the Margate Police Department. However, documentation of the investigations was sketchy, and the relative credibility of the various witnesses who offered differing versions of the incidents was a question for the jury. It was thus ultimately for the jury to determine whether the police department's response to prior incidents was adequate and appropriate, and whether its actions established a pattern that could be considered "the moving force" behind the Mary Brown incident.

---

**2.** Defendant is of course technically correct that the case law does not require that a city adopt or follow any specific procedures in order to avoid § 1983 liability, *see Brooks v. Scheib*, 813 F.2d 1191 (11th Cir.1987), and that Margate's lack of a formal, written complaint procedure is not, in and of itself, sufficient to establish a § 1983 violation. The City must, however, acknowledge that allegations of a police department's failure to maintain thorough and accurate records of citizen complaints—if substantiated—could be considered as *evidence of* deliberate indifference.

### b) Paucity of evidence of a "persistent and widespread practice" of excessive use of force.

Defendants argue that even assuming Plaintiff's version of the Goldman and Luback matters is accurate, evidence of two prior reported incidents of alleged brutality is not sufficient to support the jury's verdict as to the City's § 1983 liability. Plaintiff counters that one cannot rely solely on the *number* of reported incidents to determine whether a policy is "persistent and widespread." In addition, Plaintiff argues that the Goldman and Luback evidence established that the department was on notice of a possible problem. Plaintiff's burden was to show that a pervasive policy of deliberate indifference to excessive use of force existed, not that any specific number of incidents occurred. Put differently, a smaller number of incidents where the investigation and resulting disciplinary actions were inadequate may be more indicative of a pattern than a larger number of incidents where the department fully and satisfactorily addressed the matter and responded appropriately.

The two pre-Brown incidents and the one post-Brown incident (McNaughton) combined with the other evidence presented was sufficient to create a question of fact requiring that the § 1983 issue be sent to the jury. Defendant repeatedly falls back on the argument that all three cited incidents were investigated. However, it is not simply whether an investigation was conducted that is determinative; rather, it is *how* that investigation was conducted, by whom, and to what extent the department followed through if remedial action was indicated.

Defendant's reliance on *Carter v. District of Columbia*, 795 F.2d 116 (D.C.Cir.1986), is misplaced. In that case, the D.C. Court of Appeals affirmed the district court's granting of a directed verdict for the District because of the lack of proof of a persistent practice which lead to a deprivation of Carter's rights. The plaintiff's claim in *Carter* was similar to Mary Brown's: namely, that the city's and the police chief's failure to train, supervise, investigate, and discipline police officers amounted to deliberate indifference to/tacit approval of the excessive use of force. The

*Carter* court found that the six cited incidents of alleged misconduct did not amount to a pervasive pattern; Defendant argues that the three incidents cited in Brown are therefore clearly inadequate to establish a pattern or practice.

Plaintiff counters that taking numbers out of context and applying them to factually distinguishable situations frequently leads to misleading and inaccurate conclusions. While the six incidents of alleged excessive use of force in *Carter* may not have been statistically significant in Washington, D.C., three such incidents may be sufficient to establish a pattern in Margate. Plaintiff therefore argues that given the 14–to–1 population disparity between D.C. and Margate, the Goldman, Luback, and McNaughton incidents would be equivalent to over 40 incidents in the *Carter* matter. Plaintiff falls to some extent into the same undisciplined use of statistical analogies that she criticized Defendants for, but her point is nonetheless fairly well-taken.

A second significant distinction between the Mary Brown and *Carter* cases is that there was no suggestion in *Carter* that the District of Columbia Police Department had a policy of resolving citizen complaints orally, so there is a higher probability that the six recorded incidents are a more accurate reflection of the number of complaints actually lodged against D.C. officers. This is in sharp contrast to the Margate Police Department policy. The City admitted that prior to 1988 citizen complaints were routinely disposed of orally with no record kept of the complaint nor any documentation made of any investigation that was conducted. The City also conceded that all victims, witnesses, and officers present at the scene of an incident were not always questioned, statements were not taken, and police and hospital reports were not always reviewed with an eye toward isolating and resolving material discrepancies. In addition to Mr. Harms' expert opinion, the City's own officers testified that these actions were necessary to fully and adequately investigate allegations of police brutality. Plaintiff has clearly raised a question about the integrity and thoroughness of the disposition

of both recorded and unrecorded complaints, and has thus created an jury issue as to whether City policymakers were deliberately indifferent to allegations of excessive use of force by City officers.

The Court's duty at trial was simply to determine whether a rational jury could find from all of the evidence presented that a pervasive policy of failing to adequately investigate complaints of excessive use of force was the moving force behind Officer Chamberlain's actions against Mary Brown. It was the jury's duty to decide whether the requisite causal link between the City's actions (or inaction) and the Mary Brown incident was established. As the Third Circuit explained, "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Bielevicz v. Dubinon,* 915 F.2d 845, 851 (3rd Cir.1990).

The Court remains convinced that sufficient evidence was presented at trial to justify sending the § 1983 claims to the jury. The jury's verdict was not so inconsistent with the evidence as to justify this Court's invocation of the extraordinary remedy of overturning that verdict. As Judge Atkins wrote in *Depew:*

> The evidence was far from overwhelming, but it was sufficient to support the jury's verdict. The jury was entitled to draw all reasonable inferences from the evidence and evaluate the credibility of the witnesses. The evidence revealed sufficient prior incidents where the police had used excessive force to put the city on notice. Yet, the city failed to take proper remedial action. This evidence was sufficient to support a finding that the city's officials implicitly ratified a custom which resulted in plaintiff's injuries.

*Depew v. City of St. Marys, Georgia,* 787 F.2d 1496, 1501 (11th Cir.1986).

**3.** While Chamberlain styles his motion as one for "Judgment After Trial and/or Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial," all four of his allegations of error are discussed as errors requiring a new trial. The only reference to other relief from the verdict is contained in a brief, conclusory paragraph

2. Motion for New Trial
 a) Manifest weight of the evidence.

The City argues that it is entitled to a new trial because the jury verdict is contrary to the greater weight of the evidence. In effect, Defendant raises the same issues as in the insufficiency argument above, although the standard is somewhat different. After due consideration of Defendants' arguments, the Court remains convinced that the jury's verdict is supported by the record, and the City is not entitled to a new trial.

 b) Inconsistent verdict.

Finally, the City argues that a new trial is mandated because the verdict is internally inconsistent. The jury absolved the two city officials—City Manager Thomas Hissom and the Chief of Police—of all liability, but also found that the City had violated Mary Brown's civil rights. Defendant argues that because a municipality can only act through natural persons, the City of Margate could not be found liable unless one or more of the individual named Defendants had also been found liable. Defendants do not cite any authority for this argument, and it merits no more than brief consideration here. The evidence established that Margate has a City Manager style of municipal government. Testimony regarding who was ultimately responsible for police department policy—the City Manager or the Chief of Police—was confusing and somewhat contradictory. The jury may not have been able to decide conclusively which official was ultimately responsible for the City's policies, and therefore declined to find any particular individual liable. This is not necessarily inconsistent with a finding that someone or some combination of policymakers had implicitly or explicitly condoned a policy of tolerance toward the excessive use of force.

*B. Louis Chamberlain's Motions* [3]

 1. Attorney–Client Privilege [4]

Defendants contend that the Court improperly admitted testimony regarding a

at the end of the document. Accordingly, Chamberlain's motion will be addressed as a motion for new trial.

**4.** Defendant City of Margate, having failed to make this argument in its own post-trial motion, has joined Chamberlain in asserting a violation

meeting that was held in Margate after Mary Brown filed her suit at which Mr. Boyd, Defendants' counsel, was present. At trial, Plaintiffs' counsel attempted to elicit details about the meeting (who attended, what was discussed, etc.), and Defendants objected on grounds of attorney-client privilege. The Court overruled the objection, and allowed some testimony about what transpired at that meeting.

■ A party who invokes a privilege to prevent otherwise admissible evidence from being presented to the jury bears the burden of establishing the existence of that privilege. Defendants alleged that Mr. Boyd called the meeting "for purposes of gathering facts for use ... in developing a defense strategy" regarding the Mary Brown matter. However, Defendants did not produce any evidence, other than counsel's statement, to support this contention, nor did they establish that the meeting was "confidential" or that there was a "reasonable expectation of confidentiality" as required by the case law. Defendants argued that only City employees were present at the meeting, but failed to list those employees or identify their positions with the City. Clearly *all* employees of the City of Margate would not be considered Mr. Boyd's "clients" for purposes of discussing the Mary Brown matter. Because Defendants did not meet their burden of establishing that a privilege existed, admission of evidence about the meeting was soundly within the Court's discretion.

2. Verdict Form

■ Defendants argue that the Court erred in refusing to use Defendants' proposed verdict form which broke down the compensatory damage award by party and by claim. Defendants requested such a breakdown "with the view that this information would become important in Plaintiff's Motion for Attorney's Fees, assuming they were successful on any of the Section 1983

of the attorney-client privilege in its "Supple-

claims." The two cases Defendants cite do not, however, mandate a special verdict form in the situation presented here.

The first case Defendants rely upon, *O'Neill v. Krzeminski*, 839 F.2d 9 (2nd Cir. 1988), is readily distinguishable from this case. In *O'Neill*, two police officers grabbed O'Neill and struck him with their fists and a blackjack and then dragged him by the throat across the floor of the detention area while a third officer watched. The third officer, Conners, did not participate in the beating, but neither did he intercede on O'Neill's behalf. The Second Circuit held that a special verdict form was required in that case to set Conners' liability apart from that of the other officers because there was insufficient evidence for a jury to conclude that Conners' failure to come to O'Neill's aid was a proximate cause of the beating. "The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them.... With respect to the subsequent dragging of O'Neill across the floor, however, the case against Conners is adequate to create an issue of fact for the jury." *O'Neill*, 839 F.2d at 11–12. The Court went on to note that "[n]ormally, a jury need not allocate compensatory damages among defendants, but such allocation may be required where the liability of a defendant is limited to acts that inflict only a portion of the damages." *Id.* at 12.

In the instant case, there is no such clear-cut distinction between the City's and Chamberlain's liability. In fact, the very nature of municipal liability under § 1983 in this type of case makes separating it from the liability of the individual officer quite difficult. To find the City liable, the jury must find that the municipality's policy or custom was the moving force behind the constitutional violation. If the jury so finds, it becomes difficult to support Defendants' argument that "it could be said [the City] only inflicted a portion of the damages."

The second case cited by Defendants in support of their proposed verdict form is

mental Motion."

equally inapposite. That case involved multiple defendants and a variety of different causes of action. A special ten-part verdict form was used, and its use upheld by the First Circuit. *Ruiz v. Gonzalez Caraballo,* 929 F.2d 31 (1st Cir.1991). However, the possibility that a special verdict form may be necessary in a case with multiple defendants and numerous and varied counts is obvious. There is nothing in the court's opinion in *Ruiz* to support Defendants' contention that use of such a form is required in *all* § 1983 cases with more than one defendant or more than one count. The Court is aware of no other precedent which would mandate the use of a special verdict form in the Mary Brown case.

### 3. Jury Instructions

Defendant Chamberlain argues that the Court erred in refusing or modifying Defendant's proposed instructions numbered 15, 21, 23, 24, and 26. Defendant's objections to the Court's rulings on each of these instructions is well-preserved in the record, as are the Court's reasons for finding as it did. All of the arguments presented in Defendant's motion have already been addressed. After reconsidering those arguments, the Court finds nothing to justify a departure from its previous rulings.

### 4. Manifest Weight of the Evidence

Defendant Chamberlain argues that "the manifest weight of the evidence ... establishes that Louis Chamberlain acted in self defense due to the fact that there was no finding that Defendant Chamberlain acted with malice, willfulness or reckless indifference to Plaintiff Mary Brown's rights." This is a misstatement of the facts. The jury clearly *did* find that Chamberlain acted with reckless indifference, as the jury was instructed that a finding of "reckless indifference" is required for a guilty verdict on a § 1983 claim. An instruction on self defense was also given, and the jury apparently found that the defense was not established in this case. The jury's finding on this issue will not be overturned by the Court.

For all of the reasons discussed, it is hereby

ORDERED and ADJUDGED as follows:

1. Defendant City of Margate's Motion for Judgment After Trial and/or Motion to Set Aside the Verdict and/or Motion for JNOV and/or Motion for Judgment in Accordance with Motion for a Directed Verdict and in the Alternative Motion for New Trial is **DENIED;**

2. Defendant City of Margate's Supplemental Motion for New Trial is **DENIED;** and

3. Defendant Louis Chamberlain's Motion for Judgment After Trial and/or Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial is **DENIED.**

DONE and ORDERED.