Anne **HORNFELD**, Plaintiff,

v.

**CITY OF NORTH MIAMI BEACH, an Incorporated City in Dade County, Florida, and John Asmar, individually, Defendant.**

No. 98–0580–CIV.

United States District Court,
S.D. Florida.

Nov. 9, 1998.

1358

Paul A. Capua, and Peter M. Capua, Lorenzo & Capua, Miami, FL, for Plaintiff.

James C. Crosland, Denise Marie Heekin, Miller, Mintz, Kornreich, et. al., Miami, FL, for Defendant.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Counts II and III of the Complaint and Incorporated Memorandum of Law [D.E. # 10]. Defendants have moved to dismiss Count II, which alleges deprivations of Plaintiff Anne Hornfeld's rights conferred by the Equal Protection Clause of the Fourteenth Amendment by the City in violation of 42 U.S.C. § 1983, and Count III, which alleges these same deprivations were committed by Asmar. Defendants seek to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as arising under federal law and deprivations of rights secured by the Constitution. After careful consideration of the parties' arguments, the relevant case law, and the record as a whole, the Court concludes that Defendants' motion to dismiss should be denied.

## I. Findings of Fact and Procedural Background

Anne Hornfeld ("Plaintiff") filed a three-count complaint alleging violations of the Age Discrimination in Employment Act of 1967 (the "ADEA"), codified as amended at 29 U.S.C. § 621, *et seq.* and 42 U.S.C. § 1983. Plaintiff claims that she was the victim of unlawful employment practices perpetrated by the City of North Miami Beach and John Asmar (hereinafter collectively referred to as "Defendants"). Count I of the complaint alleges that the City of North Miami Beach

(the "City") discriminated against Plaintiff on the basis of age in violation of the ADEA. Count II alleges that the City violated Plaintiff's equal rights secured by the Fourteenth Amendment of the U.S. Constitution. In Count III, Plaintiff alleges similar violations of her right to equal protection under the laws by John Asmar ("Asmar"), in his individual capacity. Counts II and III were brought pursuant to 42 U.S.C. § 1983.

Defendants filed an answer to Count I of the complaint. They have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts II and III, asserting that Plaintiff has failed to state a claim upon which relief may be granted. The City contends that Count II should be dismissed because the ADEA is the exclusive remedy for age discrimination in employment. Asmar urges that dismissal of Count III is appropriate because he is qualifiedly immune from suit in his individual capacity.

The limited facts in the record at this stage of the proceedings reflect that Plaintiff, a 68–year old female, was employed by the Public Utilities Department of the City of North Miami Beach from April 1986 until her termination in May 1996. During her employment, Plaintiff performed her job responsibilities satisfactorily, receiving annual pay increases and bonuses commensurate with her performance.

In early 1996, Defendant Asmar, as acting Director of the Public Utilities Department, became Plaintiff's immediate supervisor. Upon his assignment, Asmar reduced Plaintiff's job responsibilities in preparation for an imminent downsizing by the City. Asmar, in an effort to effectuate the downsizing of the Department, designed and offered early retirement incentive packages for the Department's elderly employees, including Plaintiff. Without adequate time to consider her options, Plaintiff was informed that if she declined the early retirement incentive, she would be terminated. Plaintiff was also informed that a younger, less experienced employee was promoted to her position, and thus, Plaintiff's services were no longer need-ed. Finding she had no other choice, Plaintiff accepted the retirement package.

After complying with administrative requirements as a condition precedent to filing her federal ADEA action and receiving a Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed her civil complaint. Defendants contend that Plaintiff's § 1983 claims, addressed in Counts II and III of the complaint should be dismissed. Defendants argue that the ADEA is the exclusive remedy for age discrimination, and therefore, Plaintiff is foreclosed from bringing a § 1983 claim predicated on the same behavior covered by the ADEA. Defendants additionally assert that the § 1983 claim against Asmar in his individual capacity should be dismissed on the basis of qualified immunity, because the claim against him is not pled with sufficient particularity. Since Defendants have answered Count I of the complaint regarding violations of the ADEA, the Court's analysis and holding addresses only the viability of sustaining Counts II and III at this stage of the proceedings.

## II. Standard of Review for a Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal of a complaint is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). A very low sufficiency threshold is necessary for a complaint to survive a motion to dismiss. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). Moreover, a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears be-

yond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Complaint of Sea Vessel, Inc., M/V Sea Lion v. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). However, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla. 1996). Dismissal is appropriate only when no construction of the factual allegations of a complaint will support the cause of action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

## III. Discussion and Analysis

### A. Plaintiff's § 1983 Claim Against the City

Plaintiff alleges that shortly before she terminated her employment, the City implemented a policy to force its elderly employees into early retirement. She avers that the City's policy of unequal treatment of its elderly employees violates the Equal Protection Clause of the Fourteenth Amendment by denying Plaintiff the privileges and immunities of national citizenship. Plaintiff asserts that the City, as a government entity within the meaning of § 1983, is liable for damages provided by that statute. The City challenges Plaintiff's ability to bring concurrent actions under the ADEA and § 1983, and therefore, argues that Plaintiff's § 1983 claim should be dismissed.

#### 1. Exclusivity of Remedy Under the ADEA

The City contends that the ADEA "provides the exclusive remedial scheme for bringing claims of age discrimination." Therefore, because Plaintiff's § 1983 claims are based on the same allegations which underlie her ADEA claim, the § 1983 claims should be dismissed. Since no independent basis for Plaintiff's § 1983 claims has been identified, and since the ADEA provides its own enforcement scheme, the City argues that a concurrent § 1983 claim is precluded unless shown to be predicated on substantive rights distinct from protections afforded by the ADEA.

Plaintiff responds that she has alleged violations of her rights guaranteed by the Fourteenth Amendment to the U.S. Constitution, and thus, these allegations properly form the basis of her § 1983 claims against Defendants. She argues that the statutes clearly delineate the proscribed conduct and that the relief available under the respective statutes is neither duplicative nor mutually exclusive. Therefore, there is no basis for finding, as a matter of law, that Plaintiff's discrimination claim based on age forecloses her § 1983 claim based on deprivations of substantive, constitutional rights.

#### a. The City's Preemption Argument

To support its argument that an ADEA claim preempts a concurrent § 1983 claim, the City draws attention to cases not within this Circuit and which are distinguishable from the case at bar. Primarily, the City relies on a Fourth Circuit case, *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989) for the proposition that the preemption issue has been resolved. However, *Zombro* is not persuasive in providing a basis for dismissing Plaintiff's complaint under Rule 12(b)(6) for several reasons.

First, *Zombro* is procedurally distinguishable from the case before this Court. In affirming the trial court, the Fourth Circuit was reviewing the propriety of dismissing a cause of action pursuant to summary judgment standards. It is axiomatic that a plaintiff's burden to overcome a motion for summary judgment far exceeds that which a plaintiff must satisfy to defeat a motion to dismiss pursuant to Rule 12(b)(6). This is especially so in light of the federal rules' liberal pleading requirements, which mandate only notice pleading.

Second, and perhaps more significantly, the plaintiff in *Zombro* did not bring concur-

rent claims under both the ADEA and § 1983. Rather, his action was based solely on § 1983. Thus, the Fourth Circuit's analysis focused on the administrative prerequisites of an ADEA claim. In so doing, the court reasoned that the comprehensive statutory scheme encompassed in the ADEA "could be undermined, if not completely destroyed" if a plaintiff could bypass the ADEA's conciliation procedures, and instead, file an age discrimination claim directly in federal court. *Id.* at 1367. According to the *Zombro* court, to allow an employee "direct and immediate access to the federal courts" would subvert the ADEA's goal of conciliation premised on its detailed filing provisions. *Id.* at 1366. The Fourth Circuit merely assumed that Zombro brought a § 1983 action in lieu of an ADEA suit to intentionally bypass "the specific administrative process of the ADEA." *Id.* at 1367.

In contrast, here, Plaintiff complied with the administrative prerequisites prior to filing her civil complaint. Plaintiff's compliance with these conditions precedent and the EEOC's responsive notification of Plaintiff's right to sue show that she has not undermined the conciliation goals of the ADEA.

The City further attempts to persuade this Court that the Eleventh Circuit has already decided that coexisting ADEA and § 1983 claims are prohibited. *See Ray v. Nimmo,* 704 F.2d 1480 (11th Cir.1983). However, as with *Zombro,* the City's reliance on *Ray* is erroneous.

The most distinctive difference between *Ray* and the case before the Court is the nature of the employment relationship. In *Ray,* the plaintiff was a *federal* employee. The Eleventh Circuit noted that the "federal

government and its employees is a *special factor* counseling hesitation in inferring a direct cause of action" because of the "extensive grievance procedures normally available to a federal employee." *Id.* at 1486 (emphasis added). This federal/non-federal distinction is important, since § 1983 claims against federal employers is prohibited.

Contrary to Defendants' argument, the Eleventh Circuit did not foreclose the viability of bringing parallel claims for both ADEA and § 1983 violations. Rather, Ray was permitted to pursue his simultaneous Fifth Amendment due process claim, the corresponding constitutional amendment for violations of civil and substantive rights by federal employers.[1] *See id.* at 1485.

Moreover, the propriety of permitting Plaintiff's parallel claims is bolstered by Supreme Court precedent disfavoring repeals by implication. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). Implicit repeals of statutory rights are recognized only "when the earlier and later statutes are irreconcilable." *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 788, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981). Otherwise, "evidence of congressional intent [to abrogate] must be both *unequivocal and textual.*" *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989) (emphasis added). A court's guess about Congress' political will and subjective intentions is without consequence; only the statute and its language are to be considered. *Id.* In searching the ADEA for an unequivocal statement of intent to abrogate a right formerly granted, courts look to the language of the statute

---

1. The Fourteenth Amendment applies only to state violations. Federal employees must bring equal protection and due process claims under the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954) (since the Fourteenth Amendment applies only to state action, discrimination by federal authorities may be brought as violations of the Due Process Clause of the Fifth Amendment); *see also Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 253, 115 S.Ct. 2097, 2107–08, 132 L.Ed.2d 158 (1995) (equal protection obligations imposed by the Fifth and the Fourteenth Amendments are indistinguishable; "the Fifth Amendment encompasses a general guarantee of equal protection as broad as that contained in the Fourteenth Amendment"); *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976) ("equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment").

**1364**

itself. *See id.* To determine the propriety of Defendant's preemption argument, the Court must determine whether the language and legislative history of the ADEA indicates congressional intent to foreclose a public employee's claim brought concurrently under § 1983.

### 2. Assessing Congressional Intent

■ As a threshold matter, no unequivocal expression of an intent to preclude a § 1983 claim is unmistakably clear in the ADEA. Neither does the ADEA refer to the Fourteenth Amendment nor to equal protection. Nevertheless, some textual inferences and judicial interpretations lead to the conclusion that the ADEA was not enacted to supplant a public employee's right to redress of her grievances under § 1983.

For instance, the absence of reference in the text of the ADEA to either the guarantee or abrogation of alternative constitutional rights is significant in light of the ADEA's specific exclusion of federal employee coverage. *See* 29 U.S.C. § 633a ("All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... of the Federal Government ... shall be made free from any discrimination based on age."). Expressly declaring the ADEA to be the exclusive remedy for federal employees claiming discriminatory treatment on the basis of age indicates that if Congress wanted to make the ADEA the exclusive remedy for *all* age discrimination—public and private—Congress would have made an explicit pronouncement.

Neither the Supreme Court nor the Eleventh Circuit have squarely addressed whether an equal protection claim exists independent of an ADEA claim. However, several courts, including the Eleventh Circuit, have found that claims arising under Title VII are compatible with concurrent § 1983 claims.

When confronted with the preemption issue involving claims brought simultaneously under Title VII and § 1983, the Eleventh Circuit, assessing Congress' clear intent, held that the "legislative history accompanying Title VII reflects congressional intent to retain, rather than preempt, § 1983 as a parallel remedy for unconstitutional employment discrimination by municipalities and their employees." *Johnson v. City of Fort Lauderdale,* 114 F.3d 1089, 1091 (11th Cir.1997), *aff'd,* 148 F.3d 1228 (11th Cir.1998). The *Johnson* court found that Title VII was not intended to "preempt the preexisting remedy under § 1983 for violations of the fourteenth amendment by state employers." *Id.* (citing *Keller v. Prince George's County,* 827 F.2d 952, 958 (4th Cir.1987)). The court reiterated that to hold Congress provided additional remedies under Title VII while it intended to silently extinguish long established § 1983 remedies would be a perverse conclusion. *Id.* at 1092 (citing *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994)).

In contrast to its position in *Johnson,* permitting simultaneous Title VII and § 1983 claims, the Eleventh Circuit held that a § 1983 claim may not be brought in conjunction with alleged disability discrimination under the American With Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"). *See Holbrook v. City of Alpharetta, Georgia,* 112 F.3d 1522, 1531 (11th Cir.1997).[2] Unfortunately, *Holbrook,* like *Zombro,* does not provide a detailed analysis which could definitively resolve the issue of preemption. By failing to distinguish the differences or similarities between Title VII and the ADA, *Holbrook* does not assist in ascertaining why the ADA is exclusive for disability discrimination, while Title VII provides additional remedies to an aggrieved public employee. Accordingly, there is no clear guidance for determining whether the ADA and the ADEA should be analyzed as jointly precluding concurrent

**2.** Significantly, *Holbrook* was decided one week before *Johnson,* in which the Eleventh Circuit held that concurrent Title VII and § 1983 claims were permissible. Moreover, on August 3, 1998, the Eleventh Circuit substituted its *Johnson* opinion, emphatically reaffirming that violations of Title VII and § 1983 can be pursued concurrently. *See Johnson v. City of Fort Lauderdale,* 148 F.3d 1228 (11th Cir.1998).

§ 1983 claims.[3]

Conversely, there is ample support for finding that claims brought under Title VII and the ADEA deserve similar analysis. In fact, the ADEA and Title VII possess two important similarities: "in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions." *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978) ("the prohibitions of the ADEA were derived in haec verba from Title VII.").

Although *Johnson* reconciled the compatibility of a § 1983 claim with a Title VII claim, because the ADEA's substantive provisions are based directly on Title VII, and the prohibitions of the ADEA were derived from Title VII, decisions under analogous sections of Title VII are "highly relevant" to issues under the ADEA. *See EEOC v. Reno,* 758 F.2d 581, 583–84 (11th Cir.1985). Similarly, burden of proof allocations in ADEA cases are the same as in cases arising under Title VII. *See Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993) ("The Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII.") (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)).

Other courts analyzing the similarities between the two statutes have reached the same determination. For instance, the Seventh Circuit finds the legislative history of Title VII helpful in ascertaining congressional intent relative to the ADEA, "because [Title VII] is the legislation which most closely parallels the ADEA." *EEOC v. Elrod,* 674 F.2d 601, 607 (7th Cir.1982).

If the enactment of the ADEA and Title VII derived from similar concerns and intentions, then, like Title VII, Congress envisioned the ADEA as an independent statutory authority, meant to provide an aggrieved public employee an additional remedy to redress employment discrimination. In fact, in amending Title VII to include public employers, Congress acknowledged that it would be "inimical to the democratic form of government to allow the existence of discrimination in those bureaucratic systems which most directly affect the daily interactions of this Nation's citizens." H.R.Rep. No. 92–238 (1971), *available in* 1971 WL 11301, at *19. Accordingly, Congress found that "Title VII provides an *alternate administrative remedy* to the existing prohibition against discrimination perpetuated under color of state law as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983." *Id.* (emphasis added).

■ Defendants have not argued that a Title VII claim deserves analysis different from that afforded an ADEA claim. Based on the analytical framework provided by the Supreme Court, the Eleventh Circuit, and other courts which have addressed the issue, it would seem illogical that concurrent § 1983 and Title VII claims are compatible, yet concurrent § 1983 and ADEA claims are not. This lack of Congressional guidance, in conjunction with the ambiguities created among the courts, provides sufficient support that the two claims are not mutually exclusive. However, even though concurrent claims are available, Plaintiff has the additional burden to demonstrate that her ADEA claim is not based on the same substantive rights as her concurrent § 1983 claim. *See Johnson,* 114 F.3d at 1091 (a § 1983 claim is not precluded by a concurrent claim for violation of civil rights, when the former claim is based on substantive rights *distinct* from the concurrent statutory claim).

It is well established that a plaintiff cannot use § 1983 to gain remedial advantages not available to an ADEA claimant. Therefore, Plaintiff's allegations of § 1983 violations may only be asserted if some law, other than the ADEA, is the source of the right allegedly denied. *See Great American Fed. Sav. &*

---

3. It is important to note that neither *Johnson* opinion mentions the *Holbrook* opinion. This avoidance may indicate that the Eleventh Circuit's intent was not only to permit concurrent Title VII and § 1983 claims, but also may indicate that it found the congressional intent and purpose in enacting Title VII differed from that which resulted in passing the ADA.

*Loan Ass'n v. Novotny,* 442 U.S. 366, 377, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979).

### 3. The Dichotomy of Rights and Remedies Provided Under the ADEA and § 1983

■ Only where a statute's remedial scheme "leaves no room for additional private remedies under § 1983," will Congressional intent to foreclose § 1983 relief be apparent. *Suter v. Artist M.,* 503 U.S. 347, 360 n. 11, 112 S.Ct. 1360, 1368 n. 11, 118 L.Ed.2d 1 (1992). Cases in which a comprehensive remedial scheme infer Congressional intent to preempt § 1983 remedies are the exception, because " § 1983 remains a generally and presumptively available remedy for claimed violations of federal law." *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994). Therefore, this Court must read the ADEA and § 1983 to give effect to each, if possible, while preserving the sense and purpose of both statutes. *See Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).

■ Excluding a § 1983 claim is justified when it is based on rights created by the ADEA. *See, e.g., Novotny,* 442 U.S. at 377, 99 S.Ct. at 2351. With this type of claim, the ADEA's comprehensiveness is an appropriate guide to Congressional intent. A § 1983 claim to enforce a statute providing its own remedies can be limited if the "governing statute provides the exclusive remedy for violations of its terms." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). Therefore, in order for Plaintiff to maintain a § 1983 claim in conjunction with her ADEA claim, she must be seeking to protect independently conferred rights. However, contrary to the City's assertion, the "distinctly separate nature of these ... rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Novotny,* 442 U.S. at 378, 99 S.Ct. at 2352.

### a. *Protections Against Discrimination Under the ADEA*

■ The ADEA is remedial, as opposed to substantive, in nature, and its scope is narrowly confined to combat the unlawful conduct which Congress sought to prevent. Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1994).[4] The ADEA explicitly subjects employers who violate the statute to liability for legal and equitable relief. 29 U.S.C. § 626(b).

■ To set forth a prima facie case of age discrimination under the ADEA, the plaintiff must establish that: (1) she is between the ages of forty and seventy; (2) adverse employment action was taken against her; (3) she was replaced by a person outside the protected group; and (4) the plaintiff is otherwise qualified for the position from which she was demoted or discharged. *See Carlson v. WPLG/TV–10, Post Newsweek Stations of Fla.,* 956 F.Supp. 994, 1000 (S.D.Fla.1996).

■ In enacting the ADEA, Congress intended to ban *all* arbitrariness, unconstitutional or not. The legislative history of the ADEA shows Congress' intolerance for arbitrary age limits that overlooked some individuals' abilities. *See EEOC v. Wyoming,* 460 U.S. 226, 231, 103 S.Ct. 1054, 1057–58, 75 L.Ed.2d 18 (1983). Whenever age is a factor in an employment decision, the ADEA is implicated. Thus, even if Plaintiff was the only employee subjected to age discrimination, she has a cause of action under the ADEA.

### b. *Protections Against Discrimination Under § 1983*

■ Violations of § 1983 occur when a person, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to

---

**4.** The term "employer" includes municipalities. 29 U.S.C. § 630(b)(2).

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." [5] Thus, in seeking entitlement to § 1983 relief for an alleged violation by a government official of a constitutional right, it must be shown: (1) that the plaintiff has been deprived of a right, privilege, or immunity secured by the Constitution; and (2) that this was done under the auspices of governmental authority. *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

 When passed, § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978). It was enacted to stand as an independent safeguard against deprivations of substantive federal constitutional and statutory rights. *See Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 504, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982). Since no substantive rights are independently conferred pursuant to § 1983, "one cannot go into court and claim a violation of section 1983—for section 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Therefore, a § 1983 claim must be brought in conjunction with some other statute or constitutional provision that provides substantive rights, such as the Equal Protection or Due Process Clause. With these tenets in mind, the Court must first determine whether Plaintiff has been deprived of a right "secured by the Constitution and laws" of the United States.

### c. *The Equal Protection Clause*

 Plaintiff's § 1983 claim is predicated on Defendants' deprivation of her constitutional guarantee of equal protection under the federal laws. The purpose of the Equal Protection Clause contained in the Fourteenth Amendment is to protect against arbitrary discrimination by the states. *See Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 83, 108 S.Ct. 1645, 1653, 100 L.Ed.2d 62 (1988). Generally, it prohibits states and their political subdivisions from treating similarly situated citizens differently. *See Romer v. Evans*, 517 U.S. 620, 621, 116 S.Ct. 1620, 1623, 134 L.Ed.2d 855 (1996). The degree of protection varies according to the class of person discriminated against or the interest that the classification compromises. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). Governmental action that confers different rights, or imposes different duties, on persons belonging to non-suspect classes is permissible if the action has a rational relation to a legitimate governmental interest. *See Romer*, 517 U.S. at 630, 116 S.Ct. at 1627.

 Unlike the ADEA, not *all* arbitrary treatment is deemed to offend the Fourteenth Amendment. Although the clause protects against age discrimination, the elderly are not a suspect class, and governmental action that disadvantages them is constitutional if it passes the rational basis test. *See Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). Under this test, courts will not overturn a government measure "unless the varying treatment of different groups or persons is so unrelated to achievement of any combination of legitimate purposes that [can only lead to the conclusion that the] actions were irrational." *Gregory*, 501 U.S. at 471, 111 S.Ct. at 2406 (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979)).

 In sum, the conduct prohibited by the ADEA is discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). In contrast to a claim brought pursuant § 1983

---

**5.** "Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statutes, as well as those created by the Constitution. *See Maine v. Thiboutot*, 448 U.S. 1, 3, 100 S.Ct. 2502, 2503, 65 L.Ed.2d 555 (1980).

for deprivations of rights conferred by the Equal Protection Clause, class membership is irrelevant in assessing an ADEA violation. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) ("the ADEA prohibits discrimination on the basis of age and not class membership"). This dichotomy illustrates that the ADEA and § 1983 are designed to protect distinct rights and may be used as complementary forms of relief for employment discrimination in the public sector.

### 4. Propriety of Maintaining Plaintiff's § 1983 Claim Against the City

 In light of Supreme Court precedent, and the paucity of facts in the record at this stage of the proceedings, the Court finds that Plaintiff has alleged enough factual predicate to overcome the City's motion to dismiss. Plaintiff's complaint meets initial requirements of stating violations of two distinct rights. She first claims that she was the victim of age discrimination in violation of the ADEA. Her subsequent claim is that she was a member of a protected class that was being discriminated against as a result of an unlawful *policy* requiring retirement of persons in excess of a certain age. This latter allegation is the basis of her equal protection claim. By pleading that she received unequal treatment as a result of an unlawful policy, Plaintiff met standards for alleging municipal liability as set forth in *Monell*. Municipalities are immune from liability for unauthorized actions of lower level employees, unless the final decision makers of the City participated in establishing a *policy or custom* that directly or indirectly resulted in the constitutional violation. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *see also Brown v. City of Margate*, 842 F.Supp. 515, 516 (S.D.Fla.1993), *aff'd*, 56 F.3d 1390 (11th Cir. 1995).[6]

Count II of the complaint clearly alleges the existence of a policy to discriminate against older employees in violation of the "Equal Protection Clause of the Fourteenth Amendment." Plaintiff will need to establish the existence of a policy implemented by the City that will provide relief other than that which she is seeking under her ADEA claim, and that the City's actions have no rational basis toward achieving a legitimate interest. Although this may prove to be a difficult burden to satisfy, at this point, the Court need only consider whether Plaintiff has alleged sufficient facts to overcome the City's motion to dismiss.

 In concluding that Plaintiff may pursue her concurrent claims under the ADEA and § 1983, the Court adheres to Supreme Court precedent which cautions against preclusion of a federal right in the absence of clearly stated congressional intent. *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 425–28, 107 S.Ct. 766, 771–73, 93 L.Ed.2d 781 (1987). Courts must not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Id.* at 423–24, 107 S.Ct. at 770–71. It is Defendants' "burden to demonstrate that Congress has expressly withdrawn the remedy." *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106–07, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989).

Because it has not been shown, and indeed cannot be shown, that Congress explicitly repealed the use of § 1983 in age discrimination claims against non-federal public employers, and that a § 1983 claim is irreconcilable with the ADEA, the City has not met its heavy burden of demonstrating Congress unequivocally intended the ADEA to preempt § 1983 claims for unconstitutional age discrimination in employment. Conversely, the Court finds Plaintiff's allegations sufficiently implicate a violation of her equal protection rights pursuant to § 1983, in that she received unequal treatment as a result of an unlawful policy that discriminated against

---

**6.** In other words, a municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *City of St. Louis v. Praprotnik*, 485 U.S.

112, 125 n. 2, 108 S.Ct. 915, 925 n. 2, 99 L.Ed.2d 107 (1988).

Plaintiff and members of her class. In light of the above, and in accordance with analogous Eleventh Circuit precedent, providing concurrent remedies under the ADEA and § 1983 seems prudent. Thus, in the absence of a more developed factual record, dismissal of Count II of Plaintiff's complaint would be premature at this time.

### B. Basis of Plaintiff's § 1983 Claim Against Asmar

Count III alleges that Asmar deprived Plaintiff of the equal protection guaranteed by the Fourteenth Amendment. As Director of the City's Public Utilities Department, Plaintiff avers that Asmar had final policy and decision making authority with respect to Plaintiff's terms and conditions of employment. Asmar unlawfully exercised this authority by discriminatorily discharging Plaintiff in violation of 42 U.S.C. § 1983.

▮ In moving to dismiss Count III, Asmar contends that, as a public official being sued in his individual capacity, he is entitled to qualified immunity. He argues that Count III fails to state a claim upon which relief can be granted, because Plaintiff did not comply with the Eleventh Circuit's heightened pleading standard imposed on § 1983 suits against public officials. Because qualified immunity shields public officials from involvement in non-meritorious suits that interfere with the performance of their official functions, entitlement to qualified immunity must be determined at the earliest stage of proceedings. *See Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1184 (11th Cir.1994); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992).

### 1. Qualified Immunity Conferred on Public Officials

▮ The Supreme Court established a test to determine whether a public official can claim qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[G]overnment officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The official's conduct is evaluated under an objective, reasonable standard. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). A government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of *clearly established law and the information possessed by the official* at the time the conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992) (emphasis added).

Asmar is shielded from personal liability for conduct that is within the discretion conferred by his employment, unless the legal norms allegedly violated were clearly established at the time of the challenged actions. *See Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1322 (11th Cir.1989) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). If a reasonable official in Asmar's position could have believed the mandatory retirement program was lawful when he implemented the procedures which resulted in Plaintiff's discharge, immunity applies. *See Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1506–07 (11th Cir.1990).

It is beyond doubt that the principal right allegedly violated by Asmar—the equal protection right to be free from intentional age discrimination—was clearly established at the time Asmar allegedly forced Plaintiff into early retirement. *See, e.g., Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995); *Forbus v. Sears Roebuck & Co.,* 958 F.2d 1036 (11th Cir.1992). Moreover, the ADEA requires employers "to post and keep posted in conspicuous places upon its premises a notice to be prepared by the [EEOC] setting forth information as the Commission deems appropriate to effectuate the purposes of [the

ADEA]." 29 U.S.C. § 627. However, at this stage of the proceedings, determining whether Plaintiff has *established* that Asmar violated clearly established laws at the time the challenged conduct occurred is unnecessary. The Court's task is only to determine whether Plaintiff's § 1983 claim against Asmar is pled with the specificity mandated by the Eleventh Circuit. *See Marx v. Gumbinner*, 855 F.2d 783, 791 n. 5, 792 n. 16 (11th Cir.1988).

## 2. The Eleventh Circuit's Heightened Pleading Standard

In general, the Federal Rules of Civil Procedure only require that pleadings contain a short, plain statement of the claims showing entitlement to the relief requested by the pleader. Fed.R.Civ.P. 8(a) (1998). Subject to Rule 11 constraints, alternative claims, regardless of consistency, are permitted. Fed.R.Civ.P. 8(e)(2). "All pleadings shall be construed as to do substantial justice." Fed. R.Civ.P. 8(f).

 The purpose of the liberal pleading requirements is merely to put the opposition on notice of the disputed issues. Except for certain matters delineated in Rule 9, "[n]o technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). Nonetheless, the Eleventh Circuit imposes a heightened standard of pleading for § 1983 claims when seeking damages against officials in their individual capacities. *See Oladeinde*, 963 F.2d at 1485 (some factual detail must demonstrate that the violated right was clearly established when the wrongful acts occurred). This heightened standard, however, does not apply when a § 1983 claim is asserted against a public official solely for declaratory and injunctive relief, as the qualified immunity defense is unavailable. *See Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir.1993) (citing *Wood v. Strickland*, 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975)).[7]

Since the heightened pleading standard in § 1983 individual suits was adopted by this Circuit, little guidance exists for determining whether a complaint meets the intended standard. Clearly, "shotgun" pleadings "containing rambling facts and multiple claims for relief all under one count" are prohibited. *Oladeinde*, 963 F.2d at 1484. Yet, discerning an acceptable balance between "strict common law pleading and [a] ... nebulous and vague pleading" has not been accomplished with rigid precision. *Compare id. with GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367–68 (11th Cir.1998); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478–80 (11th Cir.1991); *Arnold v. Board of Educ. of Escambia County, Ala.*, 880 F.2d 305, 309–10 (11th Cir.1989). Analyzing the complaint in light of acceptable parameters dictated by the Eleventh Circuit, Asmar's motion to dismiss Count III for failure to state a claim should be denied.

## 3. The Sufficiency of Plaintiff's § 1983 Claim Against Asmar

 To determine whether a complaint sufficiently states a claim, all allegations and facts must be accepted as true and construed in the light most favorable to the plaintiff. *See Stephens v. Department of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990). Plaintiff's allegations of constitutional deprivations by Asmar in violation of § 1983, when viewed in this benevolent light, are sufficient to withstand a motion to dismiss.

The complaint unequivocally states that "Asmar personally deprived Plaintiff Hornfeld of her right to equal protection of the laws as guaranteed by the Fourteenth Amendment ... by intentionally basing his decision to force her into early retirement and effectively discharging her to an impermissible extent on account of her age." *Cf. GJR Investments*, 132 F.3d at 1367 (finding

---

7. This distinction is significant in light of the varied relief Plaintiff is seeking. For instance, under the ADEA, back pay and reinstatement are considered equitable remedies. *See* 29 U.S.C.

§ 633a(c); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975).

that the absence of the words "equal protection" to be grounds for dismissing a complaint based on qualified immunity at the pleading stage).

The complaint further alleges that Asmar "had final policy and decision making authority with respect to the terms and conditions of" Plaintiff's employment. This allegation can be easily read to indicate that, if Asmar had knowledge of a "discrimination-riddled department" when he constructively discharged Plaintiff, he "might well have acted unconstitutionally." *Brown*, 923 F.2d at 1479.

Plaintiff's complaint alleges sufficient facts to foreclose a finding of immunity for Asmar at this juncture. "Whether or not such a reading can be eventually supported by evidence, the averment survives dismissal at the pleading stage." *Id.*

## IV. Conclusion

To summarize, an ADEA claim does not automatically preempt a simultaneously pled § 1983 claim. Plaintiff, needing only to comply with the liberal pleading standards prescribed by the federal rules, has implicated § 1983 by alleging that, as a member of a protected class, her right to equal protection under the laws was violated.[8]

Moreover, the City may be held liable for a § 1983 violation if discriminatory acts were taken pursuant to either a municipal policy or custom. Municipal policy is implicated by the actions of an official who has final policy making authority in the area of the city business at issue. Thus, if Asmar makes final policy for the City on personnel issues within his department, a finding of liability against him would permit recovery from the

City. Municipal liability also may be based on a longstanding custom or practice that has attained the "force of law." Since Plaintiff has sufficiently stated an independent cause of action cognizable under § 1983, it would be premature to dismiss Count II, alleging a § 1983 claim against the City.

Finally, at this stage of the proceedings, it cannot be said as a matter of law that Plaintiff has failed to show Asmar violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Plaintiff's right to be free from age discrimination was unquestionably established at the time of her discharge, and factual questions remain concerning whether the decision to force her into retirement was motivated by an impermissible intent to discriminate. Thus, Plaintiff's complaint has laid a sufficient factual predicate to abrogate Asmar's qualified immunity at this juncture. The Court expresses no view regarding whether, during the course of this case, Plaintiff can establish facts sufficient to withstand a motion for summary judgment on this issue. Accordingly, it is

**ORDERED AND ADJUDGED** that the City's Motion to Dismiss Count II of the Complaint is hereby DENIED. It is further

**ORDERED AND ADJUDGED** that Defendant Asmar's Motion to Dismiss Count III of the Complaint is hereby DENIED. It is further

**ORDERED AND ADJUDGED** that Defendants shall have twenty (20) days from the date of this Order to file their Answer to Counts II and III of the Complaint.

---

8. The Court has not addressed, and needs not address at this time, whether Plaintiff has a Fourteenth Amendment claim of a substantive due process violation based on deprivation of a property interest in her long-term employment with the City. *See Horlock v. Georgia Dept. of Human Resources*, 890 F.2d 388, 394 (11th Cir. 1989); *see also Ray*, 704 F.2d at 1485. However, even though the Eleventh Circuit has formerly recognized the viability of such a right, recently, it has held that "areas in which substantive rights are created only by state law (*as is the case* with tort law and employment law) are not subject to substantive due process protection ... because substantive due process rights are created only be the Constitution." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)).