Betty Jean **WHITAKER**, personal representative of the Estate of Xavier Johnson, deceased, and Valerie Ann Thomas, personal representative of the Estate of Yolanda Thomas, deceased, Plaintiffs,

v.

**MIAMI–DADE COUNTY, a Municipal Entity, Edgardo Gonzalez, Raziel Tejeda, and Unknown Officers, Defendants.**

### CASE NO. 13–24450–CIV–LENARD/GOODMAN

United States District Court, S.D. Florida.

Signed February 20, 2015

---

Gregory A. Deutch, Gold and Gold, P.A., Coral Gables, FL, David H. Gold, Keith Adam Pierro, Gold & Gold, P.A., Boca Raton, FL, for Plaintiffs.

Michael Beny Valdes, Bernard Pastor, Miami, FL, for Defendants.

### ORDER GRANTING MIAMI–DADE COUNTY'S MOTION TO DISMISS (D.E. 39)

JOAN A. LENARD, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court on Defendant Miami–Dade County's ("the County") Motion to Dismiss, ("Motion," D.E. 39), filed May 15, 2014. Plaintiffs Betty Jean Whitaker, personal representative of the Estate of Xavier Johnson, deceased, and Valerie Ann Thomas, personal representative of the Estate of Yolanda Thomas, deceased, filed a Response on June 2, 2014, ("Response," D.E. 45), to which the County filed a Reply on June 17, 2014 ("Reply," D.E. 48). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

### I. Background [1]

This action arises out of the death of Xavier Johnson ("Johnson") and Yolanda Thomas ("Thomas") (collectively, "Decedents"). (Compl. ¶ 1.) On the afternoon of January 4, 2013, Thomas went to a CVS Pharmacy ("CVS") located in Kendall, Florida. (*Id.* ¶ 25.) When she exited the CVS, she entered Johnson's vehicle. (*Id.* ¶ 26.) Unbeknownst to Thomas, a CVS employee made a 911 call to the Miami–Dade Police Department and reported that Thomas had shoplifted make-up from the store. (*Id.* ¶ 27.) Officers of the Miami–Dade Police Department arrived on the scene as the Decedents were leaving the CVS parking lot. (*Id.* ¶ 29.)

The officers engaged the Decedents in a high-speed chase for approximately one mile before the Decedents' vehicle left the road and crashed into a metal roadside pole, rendering Johnson's vehicle disabled. (*Id.* ¶¶ 30–32.) While the unarmed Decedents remained in the disabled vehicle, Officers Tejeda, Gonzalez, and/or unknown officers fired several bullets into the car. (*Id.* ¶ 33.) Thomas died at the scene as a result of multiple gunshot wounds (*id.* ¶ 34); Johnson was transported to a local hospital where he died a few hours later of multiple gunshot wounds (*id.* ¶ 35).

Decedents' representatives, Betty Jean Whitaker and Valerie Ann Thomas, respectively ("Plaintiffs"), filed this action on December 11, 2013 (*see* D.E. 1), and filed the operative Second Amended Complaint ("Complaint") on April 28, 2014 (D.E. 25). The six-count Complaint alleges the following:

---

1. The following facts are gleaned from Plaintiffs' Second Amended Complaint ("Compl.," D.E. 25) and are deemed to be true for purposes of the County's Motion.

- Count I: Civil Rights Violation pursuant to 42 U.S.C. § 1983 for Excessive Force against the Defendant Officers (*id.* ¶¶ 40–48);
- Count II: Civil Rights Violation pursuant to 42 U.S.C. § 1983 for Unofficial Policy, Practice, Procedure, or Custom of Excessive Force against the County (*id.* ¶¶ 49–65);
- Count III: Civil Rights Violation pursuant to 42 U.S.C. § 1983 for Failure to Properly Train for the Use of Deadly Force against the County (*id.* ¶¶ 66–75);
- Count IV: Negligent Retention against the County (*id.* ¶¶ 76–82);
- Count V: Negligent Failure to Train and Supervise against the County (*id.* ¶¶ 8386); and
- Count VI: Wrongful Death against all Defendants (*id.* ¶¶ 87–96).

The County filed the instant Motion to Dismiss on May 15, 2014, arguing that the Complaint fails to state a claim upon which relief can be granted. (Motion at 2.) It seeks a dismissal *with* prejudice because Plaintiffs have already amended their Complaint twice and any further opportunities to amend would be futile. (*Id.* at 2–3.)

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.,* 602 F.3d 1276, 1291 (11th Cir.2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted) Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir.2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal,* 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca–Cola,* 578 F.3d 1252, 1260 (11th Cir.2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.,* —— U.S. ——, 132 S.Ct. 1702, 1706 n. 2, 182 L.Ed.2d 720 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir.2010) (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

## III. Discussion

The Complaint alleges five claims against the County: civil rights violations under 42 U.S.C. § 1983 for (1) unofficial policy or custom of excessive force (Count II) and (2) failure to train in the use of deadly force (Count III), and Florida state law claims for (3) negligent retention (Count IV), (4) negligent failure to train and supervise (Count V), and (5) wrongful death (Count VI). The Court will discuss each in turn.

### A. Count II: Unofficial Policy of Excessive Force (42 U.S.C. § 1983)

Count II alleges that "[t]he Miami–Dade County Police Department had an unofficial policy, practice, procedure, and/or custom of allowing police officers to use excessive, and often deadly, force." (Compl. ¶ 50.) "Specifically, the Miami–Dade County Police Department placed into effect a program that it either knew or should have known would amount to deadly force being used on citizens of Miami–Dade County who were allegedly operating motor vehicles as deadly weapons." (*Id.* ¶ 52.) It alleges that this unofficial policy violated the Decedents rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶ 51.) The County argues that Count II is factually inadequate to support "a finding that Miami–Dade County's purported actions or omissions were part of a widespread 'practice that is so settled and permanent that it takes on the force of the law.'" (Motion at 10 (quoting *McDowell v. Brown*, 392

F.3d 1283, 1290 (11th Cir.2004)). It further argues that Count II fails to properly allege or identify the County's final policymaker's subjective knowledge of such an unofficial practice. (*Id.* at 11–13.)

 "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir.2003).

A county's liability under § 1983 may not be based on the doctrine of respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A county is "liable under section 1983 only for acts for which [the county] is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001) (*en banc*). Indeed, a county is liable only when the county's "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Thus, [Plaintiffs] must "identify a municipal 'policy' or 'custom' that caused [their] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998) (quotation marks omitted) (alteration in original) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Id.* Thus, Plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."[2] *Id.* (citations omitted). "Under

2. The Parties appear to agree that the final policymakers for the County are the Board of County Commissioners of Miami–Dade County and the Mayor. *See* Motion at 11 & n.3; Response at 2; Complaint ¶ 60; *see also Williams v. Miami–Dade Cnty.*, 859 F.Supp.2d 1297, 1301 (S.D.Fla.2012) ("[O]nly the Miami–Dade Board of County Commissioners and the County Manager are final policymak-

ers under the County Charter and Code."), *aff'd in part and rev'd in part by Williams v. Miami–Dade Cnty.*, 516 Fed.Appx. 899, 900 (11th Cir.2013) (affirming grant of summary judgment in favor of county on Section 1983 claim). The County includes a footnote alleging that the authority once granted to the County Manager is now vested in the Mayor:

either avenue, a plaintiff (1) must show that the ... county[ ] has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330. Here, Plaintiffs invoke only the "unofficial policy" avenue. (*See* Response at 2.)

 "To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))); *see also Denno v. Sch. Bd. of Volusia Cnty.,* 218 F.3d 1267, 1277 (11th Cir.2000) ("[F]or the [County] to be held liable under the custom or practice prong of *Monell,* [Plaintiffs] must demonstrate that a custom or practice ... is so well-settled and pervasive that it assumes the force of law."). "[A] longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown,* 923 F.2d at 1481. Thus, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indif-

ference' towards the misconduct." *Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1308 (11th Cir.2001); *see also Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (" 'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.' ") (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990)). "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell,* 392 F.3d at 1290 (quoting *Brown,* 520 U.S. at 403, 117 S.Ct. 1382). "This prevents the imposition of liability based upon an isolated incident." *Id.*

 Here, the Complaint's conclusory allegations are factually unsupported and are therefore insufficient to state a claim for an unofficial County policy of permitting police officers to use excessive force. First, Plaintiffs cite a letter from the Department of Justice ("DOJ") to the Mayor of Miami where DOJ found reasonable cause to believe that City of Miami Police Department "engages in a pattern or practice of excessive use of force with respect to firearm discharges." (*See* DOJ Letter, D.E. 25–1 at 1.) However, the City of Miami and Miami–Dade County are separate municipal entities with separate police departments. The letter therefore bears no relation to the policies of Miami–Dade County, the subjective awareness of its

The passage of the "Strong Mayor" Amendment to the Miami–Dade County Home Rule Charter occurred in January of 2007. The "Strong Mayor" Amendment granted the Mayor the final policymaking authority that had previously been granted to the County Manager. Thus, the Board and the

Mayor are now the final policymakers for the County and were the final policymakers on January 4, 2013, the date of the incident here.
(Motion at 11 n.3.) Plaintiffs do not dispute this representation.

final policymakers, or the conduct of its police officers.

█ Second, Plaintiffs allege that the "unofficial policy has been repeatedly exercised in numerous cases representing the typical conduct of the Miami–Dade County Police Department." (Compl. ¶ 54.) "For instance, in a nine-month span in 2012, four of the seventeen Miami–Dade Police Department shootings involved officers allegedly protecting themselves from vehicular assaults." (*Id.* ¶ 55.) However, even assuming this is true, Plaintiffs do not allege that these other shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings. *See Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir.1987). In *Brooks,* the Eleventh Circuit held that even though there had been ten complaints about a single police officer, the City of Atlanta had no notice of misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity." 813 F.2d at 1193. As the County puts it, "a plaintiff certainly cannot establish a widespread unconstitutional practice through prior constitutional actions." (Motion at 10.) Plaintiffs have not offered any description of a prior incident involving a relevant constitutional violation.

█ Third, even assuming these four isolated shootings in 2012 were deemed to be unconstitutional uses of excessive force—an allegation *not* contained in the Complaint—the Court does not accept Plaintiffs' legal conclusion that the prior shootings constitute the sort of occurrence that is " 'obvious, flagrant, rampant and of continued duration' " that would establish a " 'causal connection between actions of the supervising official and the alleged constitutional deprivation.' " *Hartley,* 193 F.3d at 1269 (quoting *Brown,* 193 F.3d at 671). Indeed, these four

shootings were limited to a nine-month span in 2012. (Compl. ¶ 55.) "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir.1986); *see also Pineda v. City of Houston,* 291 F.3d 325, 329 (5th Cir.2002) ("Eleven incidents ... cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Prieto v. Metro. Dade Cnty.,* 718 F.Supp. 934, 938–39 (S.D.Fla.1989) (stating that "four isolated incidents involving only [the plaintiff] fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom"). Certainly, these four isolated shootings in 2012 cannot "establish a widespread practice that, 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Brown,* 923 F.2d at 1481 (quoting *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 (quoting *Adickes,* 398 U.S. at 167–168, 90 S.Ct. 1598)).

Plaintiffs reliance on *Brown v. City of Margate,* 842 F.Supp. 515, 517–18 (S.D.Fla.1993), is unavailing. In *Brown,* the court, in ruling on the city's post-trial motion for JNOV, found that three other incidents of police brutality, *"combined with the other evidence presented,"* was sufficient to create a jury question as to unofficial policy. 842 F.Supp. at 518 (emphasis added). Here, there is *no* other evidence supporting Count II. Notably, the *Brown* court admitted that it was "a close case," but did not find that the evidence so overwhelmingly favored the city so as to overturn the jury's verdict and grant the city JNOV. *Id.* at 517.

Notably, in *Brown,* the city relied on *Carter v. District of Columbia,* 795 F.2d 116, 123 (D.C.Cir.1986), where the U.S. Court of Appeals for the District of Columbia Circuit affirmed a directed verdict in

favor of the City of Washington, D.C. after finding that six prior incidents of alleged misconduct did not amount to a pervasive pattern in the use of excessive force. 842 F.Supp. at 518. The *Brown* plaintiff argued that *Carter* was factually distinguishable based on the vast population differences between the City of Margate and Washington, D.C. *Id.* Specifically, she argued:

> While the six incidents of alleged excessive use of force in *Carter* may not have been statistically significant in Washington, D.C., three such incidents may be sufficient to establish a pattern in Margate. Plaintiff therefore argues that given the 14-to-1 population disparity between D.C. and Margate, the [three other police brutality] incidents would be equivalent to over 40 incidents in the *Carter* matter.

*Id.* Although the *Brown* court was cautious to rely on statistical analogies, it noted that the plaintiff's point was "fairly well-taken." *Id.*

 While this Court is likewise apprehensive to rely on statistical analogies, it notes by way of comparison that in 1990, the City of Margate had a population of 42,985[3] and Washington, D.C. had a population of 606,900.[4] In 2013, Miami–Dade County had a population of 2,617,176.[5]

While three other incidents among a population of 42,985 (1 occurrence for every 14,328 citizens), when *"combined with the other evidence presented,"* may have been sufficient to support a jury verdict in *Brown,* this case is much more like *Carter,* statistically speaking. In fact, here, four prior incidents in a population of 2,617,176 (1 in 654,294) is far *less* statistically significant than six prior incidents in a population of 606,900 (1 in 101,150). If the statistics in *Carter* were insufficient as a matter of law to *sustain* a claim for "unofficial policy" under Section 1983, then surely the statistics in this case are, without more, insufficient to *state* one. *See Carter,* 795 F.2d at 123; *Prieto,* 718 F.Supp. at 938–39. This is especially so considering that Plaintiffs have provided the Court with no indication that any of the prior shootings were unconstitutional uses of excessive force. As the D.C. Circuit stated in *Carter,* an opinion co-authored by then-Judge Ruth Bader Ginsburg and Robert Bork:

> We can glean nothing from the seven deaths acknowledged by Police Chief Turner, because plaintiffs presented no detail at all on these incidents.... If the evidence plaintiffs presented here were adequate to make out a § 1983 case, then practically every large metro-

---

3. *See* U.S. Department of Commerce, Economics and Statistics Administration, Bureau of the Census, *1990 Census of Population and Housing, Population and Housing Unit Counts, Florida,* at 26, *available at* https://www.census.gov/prod/cen1990/cph2/cph-2-11.pdf (last visited February 4, 2015). The Court takes judicial notice of these U.S. Census figures. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir.1999) (noting that a district court can take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment).

4. *See* U.S. Department of Commerce, Economics and Statistics Administration, Bureau

of the Census, *1990 Census of Population and Housing, Population and Housing Unit, District of Columbia,* at Table 1 *available at* http://www.census.gov/prod/cen1990/cph2/cph-2-10.pdf (last visited February 5, 2015). The Court takes judicial notice of these U.S. Census figures. *See Bryant,* 187 F.3d at 1280.

5. *See* U.S. Census Bureau, U.S. Department of Commerce, State & County QuickFacts, Miami–Dade County, Florida, *available at* http://quickfacts.census.gov/qfd/states/12/12086.html (last visited February 4, 2015). The Court takes judicial notice of these U.S. Census figures. *See Bryant,* 187 F.3d at 1280.

politan police force, it would seem, could be targeted for such liability.

795 F.2d at 123. Here, Plaintiffs' unadorned statistics simply do not bespeak a "municipal policy, [that] is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Brown,* 923 F.2d at 1481 (quoting *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 (quoting *Adickes,* 398 U.S. at 167–168, 90 S.Ct. 1598))

For these reasons, the Complaint fails to state a claim for an unofficial County policy of excessive force under 42 U.S.C. § 1983 upon which relief can be granted.

### B. Count III: Failure to Train (42 U.S.C. § 1983)

Next, Plaintiffs argue that the County acted with deliberate indifference to the Decedents' civil rights by failing to properly train their police officers in the use of deadly force. (Compl. ¶ 71–72.) They allege that these failures to train "were failures of policy, widespread practice, and/or custom." (*Id.* ¶ 73.)

Defendant argues that the Plaintiffs have failed to (1) "identify a widespread practice of inadequate training such that Miami–Dade County was aware of, but was deliberately indifferent to, the purported problem[,]" (2) "allege any facts demonstrating that the Board or Mayor approved, or were specifically aware of, a policy or custom of failing to properly train or discipline police officers which caused any alleged injuries[,]" and (3) "allege or identify a pattern of widespread prior constitutional violations necessary to show that Miami–Dade County displayed deliberate indifference to the purported unconstitutional acts of its officers." (Motion at 13.) In their Response, Plaintiffs argue that the Complaint sufficiently details the County's failures, (Response at 6 (citing Compl. ¶ 71)), and "further identified numerous times that Defendant Miami–Dade County killed other citizens under the

same guise of vehicles being used as 'weapons,' thereby proving the existence of a widespread practice[,]" (*id.*) (citing Compl. ¶¶ 50, 55)). Finally, Plaintiffs allege that even if the Complaint does not allege a pattern, "it satisfies the 'single incident' exception as discussed in *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1361, 179 L.Ed.2d 417 (2011).

 The Supreme Court has cautioned "that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton,* 489 U.S. at 387, 109 S.Ct. 1197. "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Connick,* 563 U.S. 51, 131 S.Ct. at 1359; *see also City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). " [D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410, 117 S.Ct. 1382.

 "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold,* 151 F.3d at 1350. The Eleventh Circuit "repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351. "A pattern of similar constitutional violations by un-

trained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (quoting *Brown*, 520 U.S. at 409, 117 S.Ct. 1382). However, the Supreme Court has "hypothesized" that "in a narrow range of circumstances," a municipality may be liable under Section 1983 when a single incident is the "obvious" consequence of a failure to provide specific training. *Id.*

### 1. Pattern of Inadequate Training

First, Plaintiffs have failed to adequately allege that the County knew of, and was deliberately indifferent to, a need to train based on a pattern of similar constitutional violations. *Gold*, 151 F.3d at 1350. Plaintiffs appear to rely entirely on the four shootings from 2012 to establish the County's knowledge of a need to train. (*See* Compl. ¶¶ 55, 66–75.) As previously discussed, even assuming the Complaint's veracity regarding the four prior Miami–Dade Police shootings, (*see id.* ¶ 55), Plaintiffs do not allege that these shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings. *See Brooks*, 813 F.2d at 1193 ("[T]he number of complaints bears no relation to their validity."). For the same reason that Count II fails to adequately allege prior widespread abuses sufficient to establish an unofficial policy of excessive force, (*see* Section III(A), *supra*), Count III fails to allege "[a] pattern of similar constitutional violations by untrained employees" sufficient to establish deliberate indifference under Section 1983. *See Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990) (holding that the plaintiff failed to prove failure to train claim in Section 1983 action because "the need for such training must be plainly obvious to" the final decision-makers and the district court had "found no evidence of a history of widespread prior abuse by Department personnel that would have put the sheriff

on notice of the need for improved training or supervision"); *Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train).

Furthermore, Count III does not allege that the County's *final policymakers* knew of a need to train and made a deliberate choice not to take any action. Rather, Count III merely alleges that the County itself acted with deliberate indifference in the failure to train its officers. (*See* Compl. ¶¶ 66–75.) Because Count III fails to attribute any act or knowledge on the County's final policymakers, it fails to adequately allege an unofficial pattern or practice of a failure to train. *See Grech*, 335 F.3d at 1329; *see also City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197 (" '[M]unicipal liability under § 1983 attaches where— and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers.") (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452, 48384 (1986) (plurality opinion)).

### 2. Single–Incident Liability

Second, Plaintiffs argue that even if the Complaint does not sufficiently allege a pattern, it states a claim for "single-incident liability." The single-incident liability theory was first hypothesized by the Supreme Court in *City of Canton* where it acknowledged that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390, 109 S.Ct. 1197.

For example, city policymakers know to a moral certainty that their police offi-

cers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at n. 10. In *Brown,* the Supreme Court clarified:

In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right.

520 U.S. at 409, 117 S.Ct. 1382. More recently, the Supreme Court explained in *Connick* that *City of Canton* "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." 131 S.Ct. at 1361.

The single-incident liability exception is a narrow one and guidance is limited as neither the Supreme Court nor Eleventh Circuit has ever applied it. However, the Fifth Circuit has upheld a jury verdict against a county on the single-incident liability exception. *See Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir.2000). In *Brown,* a twenty-one year-old reserve sheriff's deputy named Burns injured the plaintiff while effectuating a "takedown" arrest. *Id.* at 452–53. The deputy had only "been on the force for a matter of weeks" and had no prior experience as a law enforcement officer. *Id.* at 454.

His record of having engaged in some inappropriate conduct before joining the force is undisputed. Within the two-year period before his hire, Burns had been arrested for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, and nine moving traffic violations. At the time he was hired, Burns was in violation of the terms of his probation; for that reason, he had an outstanding warrant for his arrest.

Finally, his conduct for the short time that he had been on the force also suggested a problem. Specifically, the jury reasonably could have concluded that he had an excessive number of "takedown" arrests, similar to the one in which [plaintiff] Jill Brown was injured.

*Id.* at 454–55. Significantly, the County had "a policy of providing no training itself for its regular officers and reserve deputies." *Id.* at 455. Instead, the County generally hired individuals who had already received training from a state training program. *Id.* Although Burns testified that he did receive training from the state program, the Fifth Circuit noted that the jury "reasonably could have rejected these claims." *Id.*

On these facts, the Fifth Circuit concluded that the "jury reasonably could have concluded that it was obvious to Sheriff Moore that his policy decision not to train

Burns would result in a constitutional deprivation." *Id.* at 463.

As a law enforcement officer, Sheriff Moore knew that all law enforcement officers, unless expressly restricted, will face situations calling for the application of force. The jury reasonably could have found that with Burns there was an even greater magnitude of obviousness of the need for training and predictability of the consequences without training—rendering the degree of the County's culpability for the actions of Burns very high indeed. In short, given the evidence that provided notice to Sheriff Moore of the highly predictable consequences of not training Burns—i.e., his youth, his personal record of recklessness and questionable judgment, his inexperience, and his exuberance as a reserve deputy in the short time he had been on the force, and knowledge that forcible arrests were inevitable for a law enforcement officer—Sheriff Moore's considered policy decision not to require training for Burns can be said to constitute "deliberate indifference" to the Fourth Amendment rights of those citizens Burns would encounter.

*Id.* The *Brown* court further found that the jury "reasonably could have concluded that the County's decision not to train Burns, compounded by its policy of not requiring proper supervision, was the 'moving force' behind the unconstitutional use of excessive force, which caused Brown's injury." *Id.* at 465.

In subsequent cases, the Fifth Circuit has attempted to limit *Brown* to its unique facts. *See, e.g., Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 386 (5th Cir.2005); *Roberts v. City of Shreveport,* 397 F.3d 287, 295–96 (5th Cir. 2005); *Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273, 288 (5th Cir.2002). For example, in *Davis,* a SWAT team police officer named Hill shot and killed an individual during the execution of a no-knock search and arrest warrant at the decedent's home. 406 F.3d at 377. At the summary judgment stage, the plaintiffs contended that Hill "was the first SWAT team member to enter the home and he shot Davis within the initial two seconds" while "Davis was in his living room, unarmed, arms outstretched and repeating 'don't hurt us.'" *Id.* at 377–78. However, "[a]ccording to the police officers, upon entering the home, Hill was immediately confronted by an armed Davis standing at the end of the hallway, pointing a gun at Hill." *Id.* at 378.

The decedent's representative sued Hill's supervising officers for, *inter alia,* inadequate training under Section 1983. *Id.* "According to Plaintiffs, [the supervisors] knew prior to the shooting that Hill was 'prone to use excessive and/or deadly force without cause,' that Hill had 'a reputation for displaying lewd and criminal behavior while on and off-duty,' and that Hill's 'employment history branded and identified him as dysfunctional and unfit for police work.'" *Id.* Because record evidence supported these claims, the district court denied the supervisors' motion for summary judgment.

The Fifth Circuit reversed, finding no material issue of fact existed as to deliberate indifference. *Id.* at 385–86. First, it found that although Hill had a history of indiscretions that "collectively demonstrate lack of judgment, crudity, and, perhaps illegalities, they do not point to past use of excessive force." *Id.* at 383. Thus, there was no pattern of constitutional violations on which to hold his supervisors liable for deliberate indifference. *Id.* at 383–85. Second, it found that the single incident exception did not apply, distinguishing *Brown. Id.* at 385–86. "[W]e found liability in *Brown* for a single incident when the county 'failed to provide *any* training or supervision for a young, inexperienced offi-

cer with a record of recklessness,' while also noting that 'there is a difference between a *complete failure to train,* as in *[Brown v. Bryan County]*, and a failure to train in one limited area.'" *Id.* at 386 (quoting *Cozzo,* 279 F.3d at 288). In contrast, the facts in *Davis* showed that "there *was* training and Plaintiffs have not shown that those training sessions were so deficient as to constitute deliberate indifference." *Id.*

While these cases (and many others) establish that *proving* a single-incident deliberate indifference claim for municipal liability is difficult, they do not specifically speak to the burden of *stating* such a claim. Here, Count III alleges that:

> Defendant, Miami–Dade County, acted with deliberate indifference to Xavier Johnson and Yolanda Thomas' rights by failing to train its police officers in the following ways:
>
> a) Failing to adequately train its police officers to employ safe, reasonable and necessary techniques designed to prevent encounters with potential suspects from becoming volatile or dangerous not only to the officers but also to persons in the vicinity of the encounter;
>
> b) Failing to adequately train its police officers to employ safe, reasonable, and necessary techniques designed to de-escalate encounters with potential suspects before, during, and after the commission of a minor crime;
>
> c) Failing to adequately train its police officers to employ safe, reasonable, and necessary techniques during pursuit of suspects;
>
> d) Failing to adequately train its police officers to employ safe, reasonable, and necessary techniques designed to de-escalate encounters with potential suspects who pose no threat; and/or
>
> e) Failing to adequately train its police officers in the safe, reasonable, effective, and appropriate modalities and measure of force to be used upon non-threatening, potential suspects.

(*Id.* ¶¶ 71.) However, these allegations are not well-pled facts, but rather conclusory allegations not entitled to the presumption of truth. *See Iqbal,* 556 U.S. at 680–81, 129 S.Ct. 1937 (stating that conclusory allegations are "not entitled to be assumed true").

■■■■ The Complaint's well-pled factual allegations state that after a high speed chase, the decedents' car crashed· into a metal roadside pole, rendering the car disabled. (Compl. ¶¶ 30–32.) While the decedents "remained in the disabled vehicle, unarmed, Defendants, Tejeda, Gonzalez, and/or the Unknown Officers opened fire on Yolanda Thomas and Xavier Johnson, firing multiple rounds as they sat helpless inside it." (*Id.* ¶ 33.) Both decedents died as a result. (*Id.* ¶¶ 34–35.)

These facts, even when construed in the light most favorable to Plaintiffs, are not enough "to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). That is, they do not give rise to the reasonable inference that the deaths were a result of the County's deliberate indifference to the Decedent's rights. Pursuant to *City of Canton,* the need to train police officers who will be required to arrest fleeing felons "in the constitutional limitations on the use of deadly force ... can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." 489 U.S. at 390 n. 10, 109 S.Ct. 1197. However, the facts alleged simply do not plausibly give rise to the inference that a final policymaker for the County made a "decision not to train the officer[,]" or that it was obvious that their failure to do so would result in a constitutional deprivation. *Brown,* 520 U.S. at 409, 117 S.Ct. 1382.

That is not to say, however, that stating such a claim is impossible. For example, the facts adduced in *Brown* plausibly give rise to the inference that the sheriff knew of a need to train the unruly officer, or that such a need was so obvious that his failure to do so constituted deliberate indifference to the Constitutional rights of the citizens the officer would encounter. 219 F.3d at 454–55. Again, in that case, the County had a policy of providing *no* training to its regular officers or reserve deputies and hired a twenty-one year old with no law enforcement experience who had, within the two years prior, "been arrested for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, and nine moving traffic violations." *Id.* at 454. There was also evidence that he had an excessive number of "takedown" arrests, which was the precise act which caused the plaintiff's injuries. *Id.* at 455. Thus, based on "his youth, his personal record of recklessness and questionable judgment, his inexperience, and his exuberance as a reserve deputy in the short time he had been on the force, and knowledge that forcible arrests were inevitable for a law enforcement officer," the sheriff's decision not to require training for the officer can fairly be characterized as deliberate indifference to the Fourth Amendment rights of those citizens the officer would encounter. *See id.* at 463. Here, no such facts are pled.

The Complaint's well-pled factual allegations simply do not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Accordingly, the Court finds that Count III fails to adequately state a claim under Section 1983 for failure to train. *See Gold*, 151 F.3d at 1351.

## C. Count IV: Negligent Retention (Florida state law)

Next, Count IV alleges that the County negligently retained Officers (and codefendants) Raziel Tejeda, Edgardo Gonzalez, and "Unknown Officers." (Compl. ¶¶ 76–82.) Specifically, Plaintiffs allege that the County "became aware or should have become aware of problems with Defendants Tejeda, Edgardo, and the Unknown Officers that indicated their unfitness and/or predisposition to committing a wrong, specifically the unnecessary or unreasonable use of excessive and deadly force, and failed to take further action such as investigating, discharging or reassigning the officers." (*Id.* ¶ 79.) Defendants argue that Count IV fails to state a claim because it merely "states the elements for negligent retention" rather than plead factual matter that would satisfy the *Twombly/Iqbal* pleading standard. (Motion at 16.) Plaintiffs contend that they pleaded sufficient factual matter to satisfy *Twombly/Iqbal*, but cite only to legal conclusions contained in the Complaint. (Response at 7.)

 "Unlike the theory of respondeat superior where an employer faces liability for an employee's acts committed within the course or scope of employment, the tort of negligent hiring or retention under Florida law 'allows for recovery against an employer for acts of an employee committed outside the scope and course of employment.'" *Belizaire v. City of Miami*, 944 F.Supp.2d 1204, 1214 (S.D.Fla.2013) (quoting *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla.Dist.Ct.App.1986)); *see also Watson v. City of Hialeah*, 552 So.2d 1146, 1148 (Fla.Dist.Ct.App.1989) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment and allows recovery even when an employer is not vicariously liable under the doctrine of

respondeat superior."). The Florida Supreme Court first recognized this tort in *Mallory v. O'Neil,* 69 So.2d 313, 315 (Fla. 1954), adopting the Restatement's rule which provides, in relevant part, that "[a] master is under a duty to exercise reasonable care so to control his servant *while acting outside the course of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them[.]" Restatement (First) of Torts § 317 (1934) (emphasis added).

To begin with, Count IV contains *no* factual matter, much less factual matter sufficient to "nudge[ ] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Instead, Count IV contains only legal conclusions and citations to other legal conclusions contained elsewhere in the Complaint.[6] Thus, not only does it contain no factual matter, it is a "shotgun pleading." *See Strategic Income Fund, L.L.C.*

*v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295–96 (11th Cir.2002).

 Regardless of these pleading deficiencies, the claim is fundamentally flawed because "Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment[.]" *Belizaire,* 944 F.Supp.2d at 1215. Plaintiff alleges that the officers were acting *within* the scope of their employment. (*See* Compl. ¶¶ 41, 79.) "As the Third District Court of Appeal of Florida has stated, *"[b]y its very nature, an action for negligent retention involves acts which are not within the course and scope of employment* and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior.' " *Belizaire,* 944 F.Supp.2d at 1215 (quoting *Watson,* 552 So.2d at 1148). Because it is undisputed that the acts giving rise to liability occurred within the officers' scope of employment, Count IV must be dismissed with prejudice.

6. Count IV states, in its entirety:

76. Plaintiffs hereby re-allege paragraphs 1 through 39, 50–57, 59–63, and 69–71 as if fully set forth herein.

77. Defendant, Miami–Dade County, knew, or should have known, that Defendants Tejeda, Edgardo, and the Unknown Officers were dangerous, incompetent, and liable to do harm to the citizens and residents of Miami–Dade County, Florida.

78. Defendant, Miami–Dade County, failed to conduct a reasonable investigation regarding the competence of Defendants Tejeda, Edgardo, and the Unknown Officers to be employed as police officers for the Miami–Dade Police Department.

79. During the course of Defendants Tejeda, Edgardo, and the Unknown Officers' employment, Defendant, Miami–Dade County, became aware or should have become aware of problems with Defendants Tejeda, Edgardo, and the Unknown Officers that indicated their unfitness and/or predisposition to committing a wrong, specifically the unnecessary or unreasonable use of excessive and deadly force, and failed to take further action such as investigating, discharging or reassigning the officers.

80. Defendant, Miami–Dade County, owed Xavier Johnson and Yolanda Thomas, as well as all other citizens and residents of Miami–Dade County, a duty of care to hire and retain only competent police officers.

81. Defendant, Miami–Dade County, breached this duty of care by hiring and retaining incompetent officers such as Defendants Tejeda, Edgardo, and the Unknown Officers.

82. As a direct and proximate result of Defendant, Miami–Dade County's breach of duty, Xavier Johnson and Yolanda Thomas lost their lives, and their Estates, the Survivors of Xavier Johnson, and the Survivors of Yolanda Thomas, by and through the respective Personal Representatives, are entitled to all damages allowed under the Florida Wrongful Death Statute, as set forth in ¶ 36.

### D. Count V: Negligent Failure to Train and Supervise (Florida law)

■ Next, Count V alleges that the County' negligently failed "to provide Defendants Tejeda, Edgardo, and the Unknown Officers with proper and special training and/or supervision so that they could be prepared to execute the necessary duties reasonably expected of them during the course and scope of their employment." (Compl. ¶ 85.) The County argues that Count V is deficient in that it does not allege how the officers' existing training was deficient or what additional training was needed, and rests upon " 'unwarranted deductions of fact' that should not be admitted as true for the purpose of testing the sufficiency of the Plaintiffs' allegations." (Motion at 16 (citing *Aldana*, 416 F.3d at 1248)). Plaintiffs contend that the "Complaint contains 'detailed allegations explaining exactly how Defendant Miami–Dade County failed to train its officers," citing to allegations made under Count III of the Complaint. (Response at 7.)

■ "Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Envtl. Prot. v. Hardy*, 907 So.2d 655, 660 (Fla.Dist.Ct.App.2005) (citing *Garcia*, 492 So.2d at 438–39). However, as with negligent retention, "it is clear that the alleged acts by employees giving rise to liability for negligent supervision must occur outside the employees' scope of employment." *Santillana v. Fla. State Court System*, No. 6:09–cv–2095–Orl–19KRS, 2010 WL 271433, at *11 (M.D.Fla. Jan. 15, 2010) (citing *Watson*, 552 So.2d at 1148; *Garcia*, 492 So.2d at 438). Because it is undisputed that the acts giving rise to liability occurred within the officers' scope of employment, Count V fails to state a claim for negligent supervision.

■ Even if the officers were acting outside the scope of their employment, under Florida law, the County cannot be liable for failure to train and supervise because training and supervision are "discretionary functions" for which governmental liability does not attach. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264–66 (11th Cir.2001); *see also Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1117–19 (11th Cir.2005); *Gelbard v. City of Miami*, 845 F.Supp.2d 1338, 1340–41 (S.D.Fla.2012). Although the State of Florida has waived sovereign immunity in tort actions to a certain extent, *see* Fla. Stat. § 768.28, Florida's sovereign-immunity waiver does not apply when the challenged acts are "discretionary" rather than "operational." *Kaisner v. Kolb*, 543 So.2d 732, 737 (Fla.1989).

*Lewis* is directly on point. In that case, a decedent's representative sued the City of St. Petersburg, Florida, after police officers fatally shot the decedent through the windshield of his vehicle. *Lewis*, 260 F.3d at 1261. Among the causes of action was a state law claim for negligent training. *Id.* The Eleventh Circuit stated that

> [w]hen a state or its subsidiary is sued in negligence, a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law. *Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla.1989) ("the question of the applicability of [sovereign] ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity") (internal quotations omitted). If a court is satisfied that a duty of care is owed to the plaintiff, the court must still determine whether the challenged actions are nonetheless acts

which required the exercise of basic governmental discretion, as opposed to the implementation of an already established policy. Accordingly, even if a plaintiff has adequately alleged all of the elements of a negligence claim, including the breach of a common law duty, immunity would still bar the claim if the challenged act were deemed to be governmentally "discretionary" in nature, and not merely "operational." *See id.* at 737. 260 F.3d at 1262–63. Under this framework, a court first addresses "whether the plaintiff has adequately alleged that a common law duty exists, and then whether the claim is nonetheless barred by the 'discretionary' act exception to the waiver of sovereign immunity." *Id.* at 1263.

Applying this framework to the facts in *Lewis,* the Eleventh Circuit initially found that "[u]nder Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Id.* at 1265 (citation omitted). Thus, the plaintiff's claim "that the City's negligent training of its employees caused [the decedent] to suffer damages, taken as true and viewed in the light most favorable to Lewis, alleges facts upon the City, if a private entity, would be liable." *Id.*

However, the Eleventh Circuit then held that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Id.* at 1266. Because the appellant challenged "the reasonableness of basic policy decisions made by the City, the 'discretionary' function exception to the waiver of sovereign immunity applie[d] and her claim [wa]s barred." *Id.*; *see also Cook,* 402 F.3d at 1118–19.

Here, too, Plaintiffs challenge the County's decisions "regarding how to train its officers and what subject matter to include in the training[.]" *Lewis,* 260 F.3d at 1265; *see also Cook,* 402 F.3d at 1118. For example, the Complaint alleges that the County was negligent in "[f]ailing to adequately train its police officers to employ safe, reasonable and necessary techniques designed to prevent encounters with potential suspects from becoming volatile or dangerous not only to the officers but also to persons in the vicinity of the encounter," and "[f]ailing to adequately train its police officers to employ safe, reasonable, and necessary techniques designed to de-escalate encounters with potential suspects before, during, and after the commission of a minor crime[.]" (Compl. ¶¶ 71(a) & (b).) Thus, as in *Lewis* and *Cook,* the omissions that give rise to Plaintiffs' negligent training and supervision claim are "discretionary" governmental functions from which the County is immune to tort liability. *Lewis,* 260 F.3d at 1266; *Cook,* 402 F.3d at 1118. "To find otherwise would amount to judicial intervention, by way of tort law, into the fundamental decisionmaking of the legislative and executive branches—a practice against which the Florida courts have repeatedly cautioned." *Cook,* 402 F.3d at 1118–19 (citing *Henderson v. Bowden,* 737 So.2d 532, 538 (Fla.1999); *Kaisner,* 543 So.2d at 736–37). Accordingly, Count V is dismissed with prejudice.

### E. Count VI: Wrongful Death

Finally, Count VI of the Complaint alleges that the officers breached their duty to use reasonable force, the County is vicariously liable for the breach, and the breach proximately caused the decedents' deaths.[7] (Compl. ¶¶ 92–93.) The County

---

7. Count VI also alleges that the County was negligent for failing to train and supervise the officers, but the Court has already found that the County is immune from such claims. *See* Section III(D), *supra.*)

argues that it is entitled to sovereign immunity on the wrongful death claim. (Motion at 17.) Specifically, it argues that "a government entity cannot be sued where an 'act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" (Motion at 17 (citing Fla. Stat. § 768.28(9)(a)).) Plaintiffs argue that "there are several facts yet to be brought to light to allow this Court to hold as a matter of law that the officers' actions were taken in bad faith or with malicious purpose." (Reply at 8.) However, at the Motion to Dismiss stage, the Court's review is limited to the four-corners of the Complaint. *See St. George v. Pinellas Cnty.*, 285 F.3d at 1334, 1337 (11th Cir. 2002).

Florida has not waived sovereign immunity for acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. 768.28(9)(a). Accordingly, Florida courts have held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or exhibited wanton and willful disregard of human rights, safety, or property. *See, e.g., Willis v. Dade Cnty. Sch. Bd.*, 411 So.2d 245, 246 (Fla.Dist.Ct.App.1982) (finding that trial court properly determined that a complaint alleging a "malicious" assault and battery fails to state a cause of action pursuant to Section 768.28). Additionally, the Eleventh Circuit has stated that the question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard may, in certain cases, be decided by the court as a matter of law. *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir.2004).

Here, the Court need not decide anything as a matter of law because the Complaint explicitly alleges that the challenged acts exhibit "a willful, wanton and callous disregard" for the decedents' rights. (Compl. ¶ 58.)[8] As such, the County is shielded by sovereign immunity from the vicarious liability of the officers' acts pursuant to Florida Statute 768.28(9)(a). *See Willis*, 411 So.2d at 246. Therefore, Count VI fails to state a claim for wrongful death upon which relief can be granted.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Miami–Dade County's Motion to Dismiss (D.E. 39), filed May 15, 2014, is **GRANTED**;

2. Counts II, III, and VI of the Second Amended Complaint (D.E. 25) are **DISMISSED without prejudice** as to the County; and

3. Counts IV and V of the Second Amended Complaint (D.E. 25) are **DISMISSED with prejudice.**

**DONE AND ORDERED.**

---

**8.** Paragraph 58 of the Complaint is contained in Count II for Excessive Force under Section 1983, and is incorporated by reference into Count VI for Wrongful Death. (*See* Compl. ¶ 87.)